## Bridy's Estate

Argued May 21, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, BARNES and PATTERSON, JJ.

*Louis Silverman,* with him *Charles P. Mirarchi,* for appellants.

*Robert V. Moser,* for appellees.

PER CURIAM, June 24, 1940:

Constante Bridy died on July 25, 1937, and letters of administration were taken out on his estate, no will having been filed at that time. Less than a month later a will alleged to have been the last will and testament of Bridy was presented to the Register of Wills of Northumberland County for probate. A caveat was filed by Ben Bridy, a brother of Constante's, excepting to the probate of the will. In due course an issue was framed and certified to the Court of Common Pleas and tried. In substance it was this: "Whether or not the signature on the alleged last will and testament in question is the genuine signature of Constante Bridy." The proponents of the will were the decedent's stepchildren; the contestants were his brothers and a sister.

The alleged will's witnesses, Edward Kolovich and his wife, testified that the signature on the will was that of Constante Bridy. *Proponents* called two bank officials who qualified as handwriting experts and who testified that the same person wrote the signature "Constante Bridy" on the will that wrote the admittedly genuine Constante Bridy signatures on certain exhibits. On behalf of the *contestants* certain handwriting experts testified that they had compared the disputed signature with the admittedly genuine signatures of Constante

Bridy and that in their opinion the alleged signature at the end of the will "was *not* written by the same person who signed that name on these undisputed documents, but was written by another person as a free-hand drawing in an attempt to simulate or copy or forge the signature of this party."

The witness to the will testified that Bridy signed it at their home on the afternoon of July 16, 1937. The contestants called several witnesses who testified that Bridy was elsewhere than at the Kolovich home on the afternoon in question. On this point, as on the question of the genuineness of the signature on the will, there was conflicting testimony. The jury found in favor of the proponents of the will.

In addition to the assignment of error based upon the contention that the verdict was against the weight of the evidence, there are assignments based on alleged errors in the charge of the court. One of these is that the court erred in permitting a witness for proponents to testify as an expert in handwriting when he was not so qualified. We find no merit in any of these assignments. Only a general exception was taken to the charge of the court by counsel on both sides.

The only assignment of error requiring discussion is the third which is based on part of the direct examination of Edward Tabachini. Felix Frank, a witness called by the contestants, testified that he was with Constante Bridy playing bocce all the afternoon of July 16, 1937, when the will was alleged to have been signed by Bridy at the Kolovich home. To rebut this testimony, Tabachini was called by the contestants to testify that Felix Frank played in a softball game for seven innings on that afternoon. At first this witness testified that he "guessed" the date of the game was July 16, 1937. This was objected to. The objection was not ruled on. The witness then said he "supposed" it was the 16th. But shortly afterwards he testified that he "wrote up" that game for a certain newspaper and his write-up ap-

peared in the paper on the following day. This newspaper, being produced, bore the date of July 17, 1937. As this supported the inference that the game in question was played on July 16th, the witness's "guessing" and "supposing" the date did the contestants no harm.

The judgment is affirmed.